**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MAURICE ANTHONY,

Plaintiff,

v.

No. 9:22-CV-378

KEVIN ROSENBERG, et al.,

(AJB/PJE)

Defendants.

---

P

J

**APPEARANCES:** **OF COUNSEL:**

Maurice Anthony
14-A-2070
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004
Plaintiff pro se

E

NYS Office of the Attorney General OLIVIA R. COX, ESQ.
The Capitol KONSTANDINOS D. LERIS, ESQ.
Albany, New York 12224 Assistant
Attorneys Generals
Attorneys for defendants

**PAUL J. EVANGELISTA**

**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Maurice Anthony ("plaintiff") who is, at all relevant times, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights. Plaintiff asserts that defendants Kevin Rosenberg ("Rosenberg"), John Doe 1, John Doe 2, Jane Doe 2, Jane Doe 9, Benjamin Oakes ("Oakes"), Michael Sheahan ("Sheahan"), and Doe Mental Health Counselor were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights. *See* Dkt. No. 85. Plaintiff

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

also asserts that Oakes, Sheahan, Amy Ferguson ("Ferguson"), and Matthew Thoms ("Thoms") violated his rights under Title II of the Americans With Disabilities Act ("ADA"). *See id.*[2] Presently before the Court is Rosenberg, Oakes, Sheahan, Ferguson, and Thoms' (collectively "defendants") motion for summary judgment and plaintiff's cross motion for summary judgment, both pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. *See* Dkt. Nos. 157-18; 161. For the following reasons, it is recommended that defendants' motion for summary judgment be granted in its entirety and plaintiff's motion for summary judgment be denied as moot.

[2] Plaintiff's amended complaint also sought to bring a claim alleging First Amendment retaliation against defendants and raised claims against several other individuals. *See* Dkt. No. 85. On initial review, the Court sua sponte dismissed these claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See* Dkt. No. 102.

## I. **Factual Background**[3]

In support of their motion, defendants filed a Statement of Material Facts. *See* Dkt. No. 158-7. As will be discussed below, plaintiff failed to properly respond to defendants' Statement of Material Facts. *See* Dkt. Nos. 164-65.

### A. **N.D.N.Y. Local Rule 56.1**

N.D.N.Y. Local Rule 56.1(b) requires that a party opposing summary judgment file a response to the movant's Statement of Material Facts, "admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs."

[3] For the purposes of this Report-Recommendation & Order, the recitation of the facts is limited to whether plaintiff's Eighth Amendment and ADA claims are timely, and this lawsuit was filed within the statute of limitations. As will be discussed herein, the undersigned concludes that plaintiff's lawsuit is untimely because he commended this action after the relevant statute of limitations had expired. *See infra* at 21-27.

"The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis omitted).

Here, plaintiff filed a response and supplemental response to defendants' motion for summary judgment. *See generally* Dkt. Nos. 164-65. However, plaintiff's submissions are not properly responsive to defendants' Statement of Material Facts because they do not admit or deny defendants' "assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b); *see also* Dkt. Nos. 164-65. Instead, plaintiff's responses reiterate the facts from his amended complaint and dispute the factual contentions contained in defendants' declarations. *See* Dkt. Nos. 164-65. Additionally, other than in two instances, *see* Dkt. No. 164

at 21; Dkt. No. 165 at 4-5;[4] plaintiff does not cite to the record for the facts he sets forth, in violation of Local Rule 56.1(a). *See generally* Dkt. Nos. 164-65; *see also* N.D.N.Y. L.R. 56.1(a) ("Each fact listed shall set forth a specific citation to the record where the fact is established.).

The Court is not required to "perform an independent review of the record to find proof of a factual dispute." *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002)). Although the Local Rules provide that the undersigned shall deem admitted any facts that the nonmoving party fails to "specifically controvert," and pro se plaintiffs are expected to abide by the Local

[4] Citations to the Amended Complaint and the parties' briefs refer to the pagination generated by CM/ECF, located at the header of each page.

Rules, pro se plaintiffs are also afforded special solicitude in this District and Circuit. *See* N.D.N.Y. L.R. 56.1(b); *see also Treistman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). Accordingly, in deference to plaintiff's pro se status, the undersigned will independently review the record when evaluating defendants' motion for summary judgment, and "treat [plaintiff's] opposition as a response to" defendants' Statement of Material Facts. *Robinson v. Mirza*, No. 9:21-CV-1322 (DNH/CFH), 2024 WL 4464280, at *7 (N.D.N.Y. July 30, 2024), *report and recommendation adopted sub nom. Robinson v. Mizra*, No. 9:21-CV-1322, 2024 WL 4249222 (N.D.N.Y. Sept. 20, 2024) (citing *Johnson v. Lew*, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to [the p]laintiff as a *pro se* civil rights litigant . . . the Court will treat his opposition as a response

to [the d]efendant's []Statement . . . ." )); *see also Perry v. Ogdensburg Corr. Fac.*, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) ("[A]lthough [p]laintiff failed to respond to the statement of material facts filed by [d]efendants as required under Local Rule[s], the Court would invoke its discretion to review the entire record when evaluating the parties' respective [m]otions for summary judgment.").[5]

## B. **Undisputed Facts**

In January 2017, plaintiff was housed at the Southport Correctional Facility ("Southport CF"). *See* Dkt. No. 85 at 55. On January 13, 2017, plaintiff was transported from the Southport CF to the Upstate Center for Vision Care in

[5] The Court has provided plaintiff with copies of all unpublished cases cited within this Report-Recommendation and Order.

Syracuse, New York, "due to complaints of pain in his left eye." Dkt. No. 158-7 at 4. That day, plaintiff was examined and treated by Rosenberg. *See id*. During the examination plaintiff was diagnosed with a detached retina in his left eye. *See id*. at 5. On January 17, 2017, and January 24, 2017, plaintiff met with Oakes in the Southport CF infirmary. *See* Dkt. No. 158-7 at 5-6. On February 3, 2017, Rosenberg performed surgery on plaintiff to repair his left detached retina. *See id*. at 6

### C. **Plaintiff's Amended Complaint**

On January 13, 2017, Rosenberg, John Doe 1, and John Doe 2 examined plaintiff "at the Harrison Optometrist" in Syracuse, New York. Dkt. No. 85 at 2. The "Harrison Optometrist" is a medical agency or facility contracted to provide services to inmates housed at the Southport CF. *See id*. at 6. Plaintiff alleges that during the examination,

Rosenberg, John Doe 1, and John Doe 2 "used a flat head tongue suppressor type object to push between the top of [his] left eyeball and the bone of [his] left eyebrow and applied pressure in between which caused [him] pain." *Id*. The force applied to plaintiff's left eye caused his retina "to rupture." *Id*. Plaintiff was diagnosed with a detached retina and was recommended for surgery within one to two weeks. *See* Dkt. No. 2 at 43.

Later that day, on the way back to the Southport CF from his medical appointment, plaintiff informed Jane Doe 9 that Rosenberg injured his left eye. Dkt. No. 85 at 4. Jane Doe 9 ignored plaintiff's complaints of pain and "told [him] to sign up for sick call." *Id*. Upon returning to the Southport CF, plaintiff was sent back to his cell, "signed up for sick call[,] and [wrote] a grievance concerning the matter of Dr. Rosenberg." *Id*.

On January 17, 2017, plaintiff was escorted to the facility infirmary in preparation for eye surgery. *See* Dkt. No. 85 at 4. Plaintiff informed Oakes how he was injured during his January 13, 2017, medical appointment with Rosenberg, raised concerns about having Rosenberg perform his eye surgery, and requested that another doctor perform the surgery. *See id*. at 4-5. Oakes ignored plaintiff and told him that he "[did] not care about what took place [and that he was] only down in the infirmary to take blood work and an E.K.G. to prep[are] [him] for surgery." *Id*. at 5. Oakes then yelled at plaintiff that "if he [did not] take the blood work or E.K.G. to get out of his face." *Id*. Plaintiff became argumentative, "was kicked out of [the] medical infirmary and escorted back to his cell." *Id*.

From January 18, 2017, to January 26, 2017, Jane Doe 2 attempted to convince plaintiff to go through with his eye

surgery. *See* Dkt. No. 85 at 5. Plaintiff advised Jane Doe 2 that he was not refusing to have eye surgery, but that he did not want Rosenberg to perform the surgery and he requested to be referred to another medical agency. *See* Dkt. No. 85 at 5-6.

Between January 19, 2017, and January 25, 2017, plaintiff spoke with Sheahan about what occurred during his appointment with Rosenberg, how Rosenberg injured his left eye, scheduling his eye surgery, and his request to be referred to another medical agency because he did not feel comfortable with Rosenberg performing the surgery. *See* Dkt. No. 85 at 6. Sheahan stated that he was aware of plaintiff's grievance and his left eye condition, but he could not retain another medical agency to perform plaintiff's eye surgery. *See id*. Sheahan told plaintiff that he should go through with the surgery. *See id*. Plaintiff informed

Sheahan that he wanted to press charges against Rosenberg, but Sheahan "laughed and walked off." *Id*.

On January 26, 2017, plaintiff again voiced his concerns to Jane Doe 2 and Oakes about having Rosenberg perform his eye surgery. *See* Dkt. No. 85 at 6-7. Oakes told plaintiff that he could either get his blood work and E.K.G. completed or go back to his cell. *See id*. at 7.

In March 2017, Doe Mental Health Counselor began to treat plaintiff. *See* Dkt. No. 85 at 7. Doe Mental Health Counselor told plaintiff that they could not talk about the incident with Rosenberg because it was a medical issue and not a mental health issue. *See* Dkt. No. 85 at 7-8. Doe Mental Health Counselor threatened to end their sessions if plaintiff continued to discuss Rosenberg and his vision problems. *See id*. In March and April 2017, plaintiff

suffered from "paranoia, fear, . . . emotional distress, [] panic attacks, hopelessness, and helplessness." *Id*. at 8

In May 2017, plaintiff reported to Oakes that he suffered from severe left eye pain, neck pain, and "extreme" headaches since he underwent eye surgery. Dkt. No. 85 at 8-9. Oakes ignored him and "did not care." *Id*. at 9.

In June 2017, plaintiff experienced vision loss. *See* Dkt. No. 85 at 9. In July 2017, plaintiff requested a reasonable accommodation because he could not read, write, or use small objects. *See* Dkt. No. 85 at 9-10. On July 14, 2017, Oakes denied plaintiff a reasonable accommodation. *See id*.; *see also* Dkt. No. 2 at 37. On August 9, 2017, Sheahan's designee affirmed Oakes' decision to deny plaintiff a reasonable accommodation. *See* Dkt. No. 2 at 38. Ferguson and Thoms also denied plaintiff a reasonable accommodation after he was moved

to the Mid-State CF. *See id*. at 10-11; *see also* Dkt. No. 2 at 41 (denying plaintiff's request for a reasonable accommodation on August 9, 2017).

Between 2017 and 2020, plaintiff sought, but could not obtain, legal representation. *See* Dkt. No. 85 at 12, 14-15, 21-30. Plaintiff also alleges that he was denied access to the facility law library because he was diagnosed legally blind and could not read or write. *See id*. at 12-13.

### D. **Plaintiff's Deposition Testimony**

Plaintiff testified that in February 2022, he did not handwrite his complaint. *See* Dkt. No. 158-1 at 55-56; 123-24. The document was written by another inmate at the Southport CF. *See id*. Plaintiff reviewed the document using his magnifying glass, signed the document with a visually impaired marker, and the document is "[t]rue and accurate to the best of his recollection." *Id*. at 56. Plaintiff

handwrote and signed his amended complaint. *See id*. at 57, 125.

Plaintiff passed vision tests with corrective lenses after he underwent left eye corrective surgery. Dkt. No. 158-1 at 91-92. Plaintiff did not recall his level of vision following left eye surgery. *See id*. at 92. In October 2016, plaintiff he was diagnosed as legally blind. *See id*. at 98. In May 2017, plaintiff complained to Oakes that his glasses were not working anymore. *See id*. at 94-95. In 2018, plaintiff received glasses, but they did not help correct his vision. *See id*. at 114-115.

Plaintiff handwrote his January 13, 2017, grievance against Rosenberg at the Southport CF and his February 8, 2017, grievance filed at the Mid-State Correctional Facility ("Mid-State CF"). *See* Dkt. No. 158-1 at 108-110.

Plaintiff testified that from 2017 to 2022, his mental health and vision issues made it difficult for him to "see" and do his normal activities. Dkt. No. 158-1 at 113. In 2018, plaintiff received a pair of glasses, but he did not begin working on filing claims that form the basis of this lawsuit. *See* Dkt. No. 158-1 at 116. In 2019, plaintiff began working on his legal claims after he exhausted the grievance process and contacted the Legal Aid Society and other law firms about taking his case. *See id*. at 116-117. The Prisoners Legal Services did not take plaintiff's case because he had other incarcerated individuals helping him. *See id*. at 117.

Plaintiff testified that (1) in 2019, he received reasonable accommodations; (2) in January 2020, he obtained access to a computer and "had everything to start studying law"; (3) in March 2020, he had a "resource room,"

could adjust colors to see better, and "started catching up on all [his] legal work and doing the things [he] needed to get [his] case started"; and (4) in August 2020, he felt "dialed in" and filed a claim with New York State that was denied as untimely. Dkt. No. 158-1 at 118-119. Plaintiff stated that between January 2020 and August 2020 he learned how to use his accommodations and to read and write. *See id*. at 119-120. Between August 2020 and February 2022, plaintiff tried to obtain legal counsel, received advice from another inmate who drafted his complaint, and "was still going through a lot of mental health issues." *Id*. at 120-121. In October 2021, plaintiff first learned that he could file a federal lawsuit. *See id*. at 121-122. Plaintiff testified that it took him until February 2022 to file he complaint in this lawsuit because Mid-State did not supply him "with any accommodations to where [he] could have done [his] work."

*Id*. at 122. Plaintiff testified that the Upstate Correctional Facility took away his accommodations, but he was still able to write the amended complaint himself. *See id*. at 125.

## E. **Defendants' Facts**

In February 2017, plaintiff was diagnosed with glaucoma and blindness in his right eye. *See* Dkt. No. 158-3 at 79. On May 1, 2017, plaintiff underwent right eye surgery to treat his glaucoma. *See id*. at 82. On May 13, 2017, plaintiff's right eye was noted as "unremarkable." *Id*. at 83. On May 30, 2017, plaintiff's left eye was noted as "unremarkable." *Id*. at 84.

Plaintiff was not provided a reasonable accommodation at the Southport CF on account of his vision issues because as of April 28, 2017, the visual acuity of plaintiff's left eye, "while wearing corrective lenses, was 20/25." Dkt. No. 158-3 at 10 (citing Dkt. No. 158-3 at 46).

To qualify for a reasonable accommodation based on "severe visual impairment" an inmate must have a "[v]isual acuity of 20/70 or less in the better eye with best correction." *Id*. at 87. To qualify for a reasonable accommodation based on "legal blindness" an inmate must have "[v]isual acuity of 20/200 or less in the better eye with best correction." *Id*. at 87.

## II. **Arguments**

### A. **Defendants' Arguments**

Defendants argue that plaintiff's claims are time barred and he is not entitled to tolling of the statute of limitations. *See* Dkt. No. 158-8 at 5-10. More specifically, defendants argue that "[t]he applicable statute of limitations for claims asserted pursuant to 42 U.S.C. § 1983 and the ADA is New York's three-year statute of limitations for tort actions under N.Y. C.P.L.R. § 214(5)." *Id*. at 5 (quoting *Solomon v. Cnty.*

*of Nassau*, No. CV 20-5227 (AYS), 2021 WL 5631766, at *6 (E.D.N.Y. Dec. 1, 2021)). Defendants contend that "Plaintiff's Eighth Amendment claims accrued on January 25, 2017, the last date Plaintiff claims he complained to Supt. Sheahan, and his ADA claims accrued on August 9, 2017, the last date he claims that his request for reasonable accommodations was denied." *Id*. "To be timely, Plaintiff had to commence his Eighth Amendment claims no later than January 25, 2020, and his ADA . . . claim no later than August 9, 2020." *Id*.

Further, defendants argue that plaintiff is not entitled to statutory or equitable tolling of the statute of limitations. *See* Dkt. No. 158-8 at 6-7. Defendants state that although federal law governs the statute of limitations, statutory "tolling principles" are determined by state law. *Id*. at 6. "In New York, the statute of limitations period may be extended

[i]f a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, but such tolling is not appropriate where a plaintiff does not act with reasonable diligence." *Id*. (citing ' N.Y. C.P.L.R. § 208) (internal quotation marks and citations omitted). Defendants acknowledge that plaintiff "relies on his visual impairment and mental health issues . . . to justify why he is entitled to tolling of the statute of limitations," but they argue that neither condition warrants statutory tolling because plaintiff was able to function and was never declared incompetent. *Id*. at 6-7. Further, defendants argue that plaintiff is not entitled to equitable tolling because plaintiff was not diligent in pursuing his rights and there were no extraordinary circumstances preventing him from filing his claims in a timely manner. *See id*. at 7-10.

Alternatively, defendants argue that even if plaintiff is afforded some degree of tolling, his claims are still time barred. *See* Dkt. No. 167 at 4-8. Defendants recognize that plaintiff filed a grievance alleging deliberate medical indifference and the filing of a grievance tolls the statute of limitations "during the time in which [an incarcerated plaintiff] complete[s] the mandatory exhaustion process." *Id*. at 5 (citing *Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011)). As the grievance procedure "imposes a mandatory deadline for CORC to respond, an [incarcerated individual] exhausts [his] administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations." *Id*. (quoting *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020)). "Under this rule, equitable tolling of the statute of limitations during the administrative exhaustion procedure should end

thirty days after CORC receives an appeal of a grievance if CORC fails to issue a decision within that time period." *Id*. (citing *Gonzalez*, 651 F.3d at 324).

Applying this standard, defendants explain that plaintiff's January 17, 2017, deliberate medical indifference grievance tolled the applicable statute of limitations until the grievance process was exhausted. *See* Dkt. No. 167 at 5 (citing Dkt. No. 167-1 at 3). On March 13, 2017, plaintiff appealed his grievance to CORC. *See id*. at 6 (citing Dkt. No. 167-1 at 3). CORC issued a decision on plaintiff's grievance on March 21, 2018. *See id*. (citing Dkt. No. 167-1 at 3). Defendants contend that the statute of limitations began to accrue on April 13, 2017, because CORC did not issue a decision within thirty days of receiving plaintiff's grievance appeal. *See id*. Defendants assert that the

statute of limitations expired on April 14, 2020, but plaintiff did not commence this lawsuit until April 20, 2022. *See id*.

As to plaintiff's ADA claim, defendants assert that the statute of limitations began to accrue on August 9, 2017, because that is the date that Sheahan denied plaintiff a reasonable accommodation. Dkt. No. 167 at 6. On February 5, 2018, plaintiff filed a grievance relating to his ADA claim, tolling the statute of limitations. *See id*. (citing Dkt. No. 167-1 at 3). At the time plaintiff filed his grievance, 181 days had accrued towards the statute of limitations and 914 days remained on the statute of limitations. *See id*. On March 21, 2018, plaintiff appealed his grievance to CORC. *See id*. (citing Dkt. No. 167-1 at 3). CORC issued a decision on plaintiff's grievance on June 12, 2019. *See id*. (citing Dkt. No. 167-1 at 3). Defendants assert that the statute of limitations "began to accrue again on April 20, 2018, with

914 days remaining in the statute of limitations" because CORC did not issue a decision within thirty days of receiving plaintiff's grievance appeal. *Id*. at 7. Defendants assert that the statute of limitations expired on October 20, 2020, but plaintiff did not commence this lawsuit until April 20, 2022. *See id*.

Further, defendants argue that New York State Executive Order 202.8, that tolled the statute of limitations from March 20, 2020, to November 3, 2020, due to the COVID-19 pandemic, did not extend plaintiff's statute of limitations long enough to render this lawsuit timely. Dkt. No. 167 at 7-8.

### B. **Plaintiff's Arguments**

Plaintiff argues that defendants' motion for summary judgment should be denied because there are multiple factual disputes. *See* Dkt. Nos. 164, 165. Plaintiff asserts

that the injuries he suffered as a result of Rosenberg's treatment left him in a "general state of hopelessness and helplessness." Dkt. No. 164 at 2. He claims that both of his eyes were "completely ineffective," rendering him "totally handicapped," and causing him "to have a serious mental collapse." *Id*. at 2-3. Plaintiff also claims that he was placed on mental health medications and "was not in the right state of mind nor physical health" to commence this lawsuit. *Id*. at 3-4. Further, plaintiff states that he "could not read or write due to extreme vision los[s]" and was "not in the right state of mind to function." *Id*. at 4. Additionally, plaintiff claims that Oakes, Sheahan, Ferguson, and Thoms did not approve reasonable accommodations, such that he did not have full access to the law library and could not "pursue due diligence." *Id*. at 4-5.

Alternatively, plaintiff argues that he exercised due diligence by filing a grievance, exhausting his administrative remedies, contacting Legal Aid to represent him in this matter, and unsuccessfully securing representation. *See* Dkt. No. 164 at 5-6, 10, 12. Plaintiff also argues that his legal blindness and his approval to receive legal documents in eighteen-to-twenty-two-point font are evidence of his visual impairment. *See id*. at 5-6, 8, 10 (citing Dkt. No. 2 at 35). He claims that corrective lenses were not enough to fix his vision condition. *See id*. at 9-10.

Conversely, plaintiff states that on January 20, 2020, after he was transferred to the Sullivan Correctional Facility ("Sullivan CF"), he "was provided with all accommodations" to "properly function." Dkt. No. 164 at 7. Plaintiff appears to state that another inmate at the Sullivan CF handwrote his complaint in February 2022, and that this is evidence of

"persistence and consistence [in] pursuing" his claims, such that he demonstrates due diligence and extraordinary circumstances and should be entitled to equitable tolling. *Id*. at 7-8.

Plaintiff also argues he is entitled to summary judgment on his claims and submits a "list of genuine issues of material fact that require(s) compensatory damages." Dkt. No. 161 at 1-2. In support of his motion for summary judgment, plaintiff reasserts the factual contentions raised in his amended complaint. *See generally id*.

Plaintiff also argues that his ADA claim should not be dismissed for lack of subject matter jurisdiction. Dkt. No. 164 at 13-14.

## III. **Legal Standards**

On review of defendants' motion for summary judgment, the facts will be related in the light most favorable

to plaintiff as the nonmoving party. *See Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is

material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature

of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

## IV. **Discussion**

### A. **Statute of Limitations**

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Clover Communities Beavercreek, LLC v. Mussachio Architects P.C.*, 676 F. Supp. 3d 82, 97 (N.D.N.Y. 2023) (quoting *Ellul v. Congregation of Christian Bros.*, 774

F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008))). "Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims." *Id*. (quoting *Smith v. City of New York*, 1 F. Supp. 3d 114, 118 (S.D.N.Y. 2013)). "Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'" *Id.* (quoting *Smith*, 1 F. Supp. 3d at 118 (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also Anthony v. Rosenberg*, No. 9:22-CV-0378 (BKS/CFH), 2023 WL 5776599, at *5 (N.D.N.Y. June 22, 2023), *report and recommendation adopted in part, rejected in part,* No. 9:22-CV-378 (BKS/CFH), 2023 WL 5367343 (N.D.N.Y. Aug. 22, 2023) (quoting *Egan v. Kennedy*, No. 04-CV-6626 (CJS), 2008 WL 4647740, at *3

(W.D.N.Y. Oct. 17, 2008)) ("As the statute of limitations is an affirmative defense, on a motion to dismiss, 'the defendant has the burden of demonstrating, based on the allegations in the complaint, that the claim is untimely.'"); Fed. R. Civ. P. 8(c)(1).

Although neither Section 1983 nor the ADA set forth a statute of limitations to bring a claim, "42 U.S.C. § 1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law." *Anthony*, 2023 WL 5776599, at *5 (quoting *Owens v. Okure*, 488 U.S. 235, 239 (1989)); *Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 62-63 (2d Cir. 2019). "In New York, the applicable statute of limitations for a section 1983 [or ADA] suit is three years, which is derived from the general or residual personal injury laws of the state." *Id.* (first citing N.Y. C.P.L.R. § 214(5); then citing *Owens*, 488

U.S. at 249-50; then citing *Romer v. Leary*, 425 F.2d 186, 187 (2d Cir. 1970); then citing *Lugo v. Senkowski*, 114 F.Supp.2d 111, 113 (N.D.N.Y. 2000)). Therefore, Plaintiff's Eighth Amendment deliberate indifference and ADA claims are “subject to New York's three-year statute of limitations.” *Id*.

“Federal law, however, governs the determination of the accrual date for purposes of a section 1983 [or ADA] claim.” *Anthony*, 2023 WL 5776599, at *5 (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *De La Rosa v. Lewis Foods of 42nd St., LLC*, 124 F. Supp. 3d 290, 299 (S.D.N.Y. 2015). “A claim accrues ‘when the plaintiff knows or has reason to know’ of the harm. *Id*. (quoting *Pearl*, 296 F.3d at 80). “The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she] is suffering from a wrong for which damages may be

recovered in a civil action." *Id*. (quoting *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980)). "With respect to a medical indifference [or ADA] claim, such a claim accrues when the constitutional violation allegedly occurs." *Id*. (citing *Cotto v. City of New York*, No. 15-CV-9123 (RWS), 2017 WL 3476045, at *3 (S.D.N.Y. Aug. 11, 2017)). "Actual awareness of injury is irrelevant[.]" *Id*. (quoting *Spigner v. City of New York, Bronx Cty.*, No. 94-CV-8015 (MBM), 1995 WL 747813, at *2 (S.D.N.Y. Dec. 18, 1995), *aff'd*, 101 F.3d 1393 (2d Cir. 1996)). Similarly, "[t]he fact that [the p]laintiff may have been unaware that he had legal claims . . . is of no consequence." *Keitt v. City of New York*, No. 09-CV-5663 (PKC/DF), 2010 WL 3466175, at *6 (S.D.N.Y. Aug. 9, 2010), *report and recommendation adopted*, 2010 WL 3466079 (S.D.N.Y. Sept. 2, 2010).

### B. **Statutory Tolling**

"Although it is well-settled that federal law determines the accrual of a cause of action arising under section 1983, tolling principles are informed by state law, unless those state principles would 'defeat the goals' of section 1983." *Anthony*, 2023 WL 5776599, at *6 (quoting *Pearl*, 296 F.3d at 80 (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989))). "In New York, the statute of limitations period may be extended '[i]f a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues." *Id.* (quoting N.Y. C.P.L.R § 208). However, "such tolling 'is not appropriate where a plaintiff does not act with reasonable diligence.'" *Id.* (quoting *Levermore v. De Silva*, 465 F. App'x 16, 17 (2d Cir. 2012) (summary order)). "Physical ailments, however, do not suffice to invoke the New York tolling provisions." *Id.* (quoting *Baroor v. New York City Dep't of Educ.*, 362 F.

App'x 157, 160 (2d Cir. 2010) (summary order); *see also Orlando v. Johnson*, No. 9:19-CV-1183 (MAD/CFH), 2022 WL 2440037, at *3 (N.D.N.Y. July 5, 2022), *aff'd,* No. 22-1683, 2024 WL 2796395 (2d Cir. May 31, 2024) (quoting *Olivio v. United States*, No. 20-CV-231 (RPK)(MMH), 2022 WL 409720, *3 (E.D.N.Y. Feb. 10, 2022) (quoting *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000))) ("[A] plaintiff must do more than allege the existence of physical or mental ailments; they must also show[ ] that these health problems rendered [them] unable to pursue [their] legal rights during the [relevant] time period.") (internal quotation marks omitted).

C. **Equitable Tolling**

"Equitable tolling of the statute of limitations is applicable in certain situations where the Court determines that a plaintiff should, in fairness, be excused from his or

her lateness in filing a complaint." *Anthony*, 2023 WL 5776599, at *7 (citing *Gonzalez*, 651 F.3d at 323-24). "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Id.* (citing *Gonzalez*, 651 F.3d at 323-24 (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004))); *Lyons v. Emerick*, 187 F. App'x 219, 221 (3d Cir. 2006) ("[I]n order to be eligible for equitable tolling, a plaintiff must exercise "reasonable diligence in investigating and bringing [his or her] claims."). "The plaintiff bears the burden of showing that he or she is entitled to equitable tolling." *Id*. (citing *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)); *see also Mandarino v. Mandarino*, 408 F. App'x 428, 431 (2d Cir. 2011) (summary order) (quoting *McCarthy v. Volkswagen of Am., Inc.,* 55

N.Y.2d 543, 548 (1982)) ("[equitable] tolling . . . is available 'only [to] those individuals who are unable to protect their legal rights because of an over-all inability to function in society.'").

"[T]he Second Circuit has held that equitable tolling is applicable to claims brought under the PLRA, otherwise a prisoner would risk the dismissal of his or her complaint based on untimeliness if he or she were to wait to receive a final administrative decision before filing suit." *Trapani v. Coryer*, No. 14-CV-683 (GTS/CFH), 2016 WL 8732638, at *5 (N.D.N.Y. June 6, 2016), *report and recommendation adopted,* No. 9:14-CV-0683 (GTS/CFH), 2016 WL 8732640 (N.D.N.Y. July 15, 2016) (citing *Gonzalez*, 651 F.3d at 323-24). "Under the Second Circuit's rule, the equitable tolling period begins when a plaintiff first raises his administrative claim, and ends when the plaintiff's administrative remedies

are deemed exhausted." *Id*. (citing *Gonzalez*, 651 F.3d 318, at 324). "The statute of limitations, however, is only tolled during the period when a prisoner is 'actively exhausting' his administrative remedies." *Id*. (citing *Gonzalez*, 651 F.3d at 322 n.2). "The statute of limitations is not tolled during the period between the accrual of the claims and when the plaintiff began the administrative remedy process. *Id*. (citing *Gonzalez*, 651 F.3d at 324).

D. **Executive Order 202.8**

"On March 7, 2020, then-New York State Governor Andrew Cuomo issued Executive Order 202, declaring a disaster emergency for the State of New York due to the COVID-19 pandemic." *Briglin v. Hurley*, No. 9:23-CV-1001 (BKS/TWD), 2024 WL 3828234, at *9 (N.D.N.Y. Aug. 15, 2024) (citing N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202 ("N.Y.C.C.R.R.")). "On March 20, 2020, Governor Cuomo

signed Executive Order 202.8, limiting court operations to 'essential matters.'" *Id*. Executive Order 202.8 declared that "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state . . . is hereby tolled from the date of this executive order until April 19, 2020." *Id.* (quoting N.Y.C.C.R.R. tit. 9, § 8.202.8). "Nine subsequent Executive Orders collectively extended the first order until November 3, 2020." *Id*. (additional citations omitted). "Executive Order 202.72 provided that the tolling of time limits established by Executive Order 202.8 would no longer be in effect as of November 4, 2020[,] . . . yielding a total tolling period of 228 days." *Id*. (additional citations omitted). "Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including . . . § 1983 claims." *Id*. (citing *Bell v.*

*Saunders*, No. 9:20-CV-00256 (BKS/TWD), 2022 WL 2064872, at *4-5 (N.D.N.Y. June 8, 2022)).

## E. **Analysis**

### 1. **Eighth Amendment: Deliberate Medical Indifference**

Viewing the facts in the light most favorable to plaintiff as the nonmoving party, the undersigned concludes that plaintiff's Eighth Amendment deliberate medical indifference claim began to accrue on January 17, 2017, because that is the date that he filed a grievance relating to outside medical care and a retinal tear.[6] *See* Dkt. No. 167-

[6] The undersigned notes that plaintiff's Eighth Amendment claim could be considered as having accrued from January 13, 2017, the date plaintiff first complained of left eye pain following treatment from Rosenberg, or January 25, 2017, the date plaintiff complained to Sheahan of his left eye pain following treatment from Rosenberg. *See generally* Dkt. No. 85. However, the undersigned concludes that January 17, 2017, is the accrual date most favorable to plaintiff because the filing of plaintiff's grievance automatically tolled the statute of limitations until the grievance procedure is

1 at 3. On March 13, 2017, CORC received plaintiff's appeal of his deliberate medical indifference grievance. *See* Dkt. No. 167-1 at 3. On March 21, 2018, CORC issued a decision on plaintiff's medical indifference grievance. *See id*. The DOCCS grievance procedure prescribes that "upon receipt of an appeal, CORC 'shall review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the grievant, the grievance clerk, the superintendent, and any direct parties within 30 calendar days from the time the appeal was received.'" *Coleman v. Hamilton*, No. 9:24-CV-455 (AMN/PJE), 2025 WL 2933461, at *7 (N.D.N.Y. Aug. 29, 2025), *report and recommendation adopted,* No. 9:24-CV-00455 (AMN/PJE), 2025 WL 2731047 (N.D.N.Y. Sept. 25,

---

exhausted. *See Trapani*, 2016 WL 8732638, at *5) (citing *Gonzalez*, 651 F.3d at 323-24).

2025) (quoting N.Y.C.R.R. § 701.5(d)(3)(ii)). "[B]ecause the DOCCS Inmate Grievance Procedure imposes a mandatory deadline for the CORC to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations." *Romano v. Ulrich*, 49 F.4th 148, 154 (2d Cir. 2022) (quoting *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020)). As CORC did not issue a decision on plaintiff's medical indifference grievance within the thirty days, the undersigned concludes that plaintiff's grievance exhausted on April 12, 2017. *See Romano*, 49 F.4th at 154 (quoting *Hayes*, 976 F.3d at 270). On April 13, 2017, the statute of limitations for plaintiff's Eighth Amendment claim began to run. Plaintiff had 1,096 days from April 13, 2017, or until April 14, 2020, to commence a lawsuit.

On March 20, 2020, when E.O. 202.8 went into effect and tolled the statute of limitations for all legal actions due to the Covid-19 pandemic, 1,072 days had elapsed towards the statute of limitations. *See Briglin*, 2024 WL 3828234, at *9 (N.D.N.Y. Aug. 15, 2024) (citing N.Y.C.C.R.R. tit. 9, § 8.202.8). On November 4, 2020, when the tolling provisions of E.O. 202.8 ended and the statute of limitations resumed, plaintiff had twenty-four days, or until November 28, 2020, to commence a lawsuit. As November 28, 2020, fell on a Saturday, plaintiff had until Monday, November 30, 2020, to commence a lawsuit. *See Williams v. Zuk*, No. 9:07-CV-789 (DNH/DEP), 2009 WL 909520, at *2 (N.D.N.Y. Apr. 3, 2009) (citing Fed. R. Civ. P. 6(a)(1) and (3)) **(**"Rule 6(a)(1) directs that when applying a prescribed time, the first day of the period is excluded, but the last day is included unless falling on a Saturday, Sunday, a legal holiday, or a

day on which weather or other conditions make the clerk's office inaccessible.”). The statute of limitations for plaintiff to commence a Section 1983 lawsuit expired on November 30, 2020, and plaintiff did not commence this lawsuit until April 20, 2022. *See* Dkt. No. 1.

Therefore, the undersigned concludes that plaintiff’s Eighth Amendment deliberate medical indifference claim is untimely because plaintiff filed this lawsuit after the statute of limitations had run. Accordingly, the undersigned recommends that defendants’ motion for summary judgment be granted as to plaintiff’s Eighth Amendment deliberate medical indifference claim.

2. **ADA**

Viewing the facts in the light most favorable to plaintiff as the nonmoving party, the undersigned concludes that plaintiff’s ADA claim began to accrue on August 9, 2017,

when Sheahan's designee and the Mid-State CF superintendent's designee affirmed the denials of plaintiff's reasonable accommodation.[7] *See* Dkt. No. 2 at 37-38, 41. On August 9, 2017, the statute of limitations for plaintiff's ADA claim began to run and plaintiff had 1,096 days, or until August 9, 2020, to commence a lawsuit.

On February 5, 2018, plaintiff filed a grievance relating to the denial of his request for reasonable accommodations, tolling the statute of limitations. *See* Dkt. No. 167-1 at 3; *see also Trapani*, 2016 WL 8732638, at *5 (citing *Gonzalez*, 651 F.3d at 323-24). As of February 5, 2018, 181 days had

[7] Plaintiff filed his request for reasonable accommodations at the Southport CF on June 28, 2017, and at the Mid-State CF on July 25, 2017. *See* Dkt. No. 2 at 37, 41. The August 9, 2017, date is more favorable to plaintiff as the final denial of these requests. *See id*. at 38, 41.

accrued towards the statute of limitations on plaintiff's ADA claim.

On March 21, 2018, CORC received plaintiff's appeal of his reasonable accommodation grievance. *See* Dkt. No. 167-1 at 3. On June 12, 2019, CORC issued a decision on plaintiff's reasonable accommodations grievance. *See id*. As CORC did not issue a decision on plaintiff's reasonable accommodations grievance within the thirty days, the undersigned concludes that plaintiff's grievance exhausted on April 20, 2018. *See Romano*, 49 F.4th at 154 (quoting *Hayes*, 976 F.3d at 270). On April 21, 2018, the statute of limitations began to run again on plaintiff's ADA claim, and plaintiff had 915 days within which to commence a lawsuit. *See Briglin*, 2024 WL 3828234, at *9 (N.D.N.Y. Aug. 15, 2024) (citing N.Y.C.C.R.R. tit. 9, § 8.202.8).

On March 20, 2020, when E.O. 202.8 went into effect and tolled the statute of limitations for all legal actions due to the Covid-19 pandemic, a total of 881 days had elapsed towards the statute of limitations. On November 4, 2020, when the tolling provisions of E.O. 202.8 ended and the statute of limitations resumed, plaintiff had 215 days, or until June 7, 2021, to commence a lawsuit. The statute of limitations for plaintiff to commence a lawsuit for his ADA claim expired on June 7, 2021, and plaintiff did not commence this lawsuit until April 20, 2022. *See* Dkt. No. 1.

Therefore, the undersigned concludes that plaintiff's ADA claim is untimely and barred by the statute of limitations. Accordingly, the undersigned recommends that defendants' motion for summary judgment be granted as to plaintiff's ADA claim.

3. **Plaintiff's Tolling Arguments**

Plaintiff argues that he should be afforded statutory and equitable tolling because of his physical and mental ailments, exhaustion of the DOCCS grievance process, and attempts to obtain legal representation, such that the tolling period would render his Eighth Amendment deliberate medical indifference and ADA claims timely. *See* Dkt. Nos. 164 at 2-6, 8, 10, 12. The undersigned disagrees for several reasons.

Plaintiff argues that he was/is legally blind, "could not read or write due to extreme vision los[s]," and his bilateral eye condition prevented him from pursuing his legal claims. Dkt. No. 164 at 2, 4-6. However, even accepting plaintiff's contentions as true, this argument is legally incorrect. As stated above, physical conditions do not trigger statutory tolling under New York law. *See Anthony*, 2023 WL 5776599, at *6 (quoting *Baroor*, 362 F. App'x at 159-60).

Similarly, although plaintiff states things like he was in a "general state of hopelessness and helplessness," had a "serious mental collapse," was placed on mental health medications, and "was not in the right state of mind," Dkt No. 164 at 2-4; plaintiff has submitted no evidence, admissible or otherwise, that he was diagnosed with a mental health condition, was prescribed medication for a mental health condition, or any other medical evidence establishing the severity of such a condition(s). Plaintiff's allegations regarding his mental state during the relevant period are conclusory and fail to satisfy his burden demonstrating that he is entitled to statutory tolling because he was "under a disability because of infancy or insanity at the time" either his Eighth Amendment or ADA claims accrued. *See Anthony*, 2023 WL 5776599, at *6 (quoting N.Y. C.P.L.R § 208).

Further, plaintiff has not demonstrated that he exercised due diligence. Plaintiff argues that he exercised due diligence because he filed a grievance and exhausted the DOCCS grievance process. *See* Dkt. No. 164 at 5. However, exhausting the DOCCS grievance process is a statutory requirement to commence a lawsuit for a Section 1983 claim; not due diligence. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

Plaintiff also argues that he exercised due diligence because he contacted Legal Aid, the Prison Legal Services, and at least one private attorney. *See* Dkt. No. 164 at 5-6, 10, 12; *see also* Dkt. No. 2 at 54-56. Yet, the "[l]ack of legal

representation does not merit equitable tolling." *Thom v. United States*, No. 05 CV 2847 (ARR), 2006 WL 3486740, at *2 (E.D.N.Y. Nov. 30, 2006) (citing *Smith v. McGinnis,* 208 F.3d 13, 18 (2d Cir.2000)); *Miles v. City of New York*, No. 14-CV-9302 (VSB), 2018 WL 3708657, at *9 (S.D.N.Y. Aug. 3, 2018) (concluding that the plaintiff did not exercise due diligence when he sought legal representation and the attorneys he contacted provided advice but did not take him on as a client.); *Huckabone v. City of Jamestown, N.Y.*, No. 09-CV-602-A (RJA), 2014 WL 4146844, at *4 (W.D.N.Y. Aug. 19, 2014) (concluding that the plaintiff did not exercise due diligence when he sought but was refused legal representation).

Moreover, plaintiff's argument that he could not pursue this lawsuit or any of his claims because he was denied reasonable accommodations is contradicted by plaintiff's

other testimony. *See* Dkt. No. 164 at 5-6. Plaintiff asserts that he could not pursue his lawsuit because he was legally blind and needed all of his legal documents provided to him in a larger font. *See id*. Yet, plaintiff testified that he (1) wrote his January 2017 grievance alleging deliberate medical indifference; (2) was able to draft and file his August 2020 claim with New York State; and (3) handwrote his amended complaint despite the Upstate Correctional Facility taking away his reasonable accommodations. *See* Dkt. No. 158-1 at 106-07, 117, 123. Plaintiff provides no further rationale explaining how he was able to handwrite and file his January 2017 grievance after he suffered his left eye injury, and before having corrective surgery on both eyes, but was otherwise unable to file this lawsuit until over five years later. Similarly, plaintiff fails to explain how he was able to write and submit his August 2020 New York

State claim and his amended complaint without reasonable accommodations, but could not file this lawsuit unless he had reasonable accommodations and learned how to use them.

Finally, plaintiff testified that his original complaint was handwritten by another inmate and that he reviewed and signed the document. *See* Dkt. No. 158-1 at 53-54; 121-22. Plaintiff does not allege that he sought the assistance of, and does not provide any reason why he did not seek the assistance of, any other individual at the Southport CF or Mid-State CF to help him draft a complaint after he exhausted the DOCCS grievance process.

Therefore, the undersigned concludes that plaintiff failed to meet his burden of demonstrating reasonable diligence and should not be afforded equitable tolling of his Eighth Amendment deliberate medical indifference or ADA

claims. *See Anthony*, 2023 WL 5776599, at *7 (citing *Gonzalez*, 651 F.3d at 323-24 (quoting *Veltri*, 393 F.3d at 322).

Accordingly, the undersigned concludes that plaintiff's Eighth Amendment and ADA claims are barred by the statute of limitations because plaintiff's complaint is untimely and he is not entitled to any additional statutory or equitable tolling. *See Anthony*, 2023 WL 5776599, at *5. Therefore, it is unnecessary to analyze the merits of those claims. *See Dillard's, Inc. v. Wells Fargo Bank, N.A.*, No. 25 CV 4330 (VM), 2026 WL 550219, at *3 (S.D.N.Y. Feb. 27, 2026) (declining to analyze the merits of claims "time-barred under the applicable statute of limitations").

## V. **Doe Defendants**

Plaintiff's amended complaint alleges that (1) on January 13, 2017, John Doe 1 and John Doe 2 treated him

and Jane Doe 9 spoke with him; (2) between January 28, 2017, and January 26, 2017, Jane Doe 2 spoke with him; and (3) in March 2017, Doe Mental Health Counselor began treating him. *See* Dkt. No. 85 at 2, 4, 6-8. Plaintiff named John Doe 1, John Doe 2, Jane Doe 2, Jane Doe 9, and Doe Mental Health Counselor (collectively "Doe Defendants") as defendants in this action. *See* Dkt. No. 85. To date, the Doe Defendants have not been identified and served with plaintiff's amended complaint or otherwise appeared in this action.

It is well settled that a plaintiff's pro se status "does not exempt a [plaintiff] from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Under the Federal Rules of Civil Procedure, "[i]f a defendant is not served within ninety days after the

complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). This Court's local rules shorten the time for service of process from ninety days under Rule 4(m) to sixty days. *See* N.D.N.Y. L.R. 4.1(b). However, when "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

When deciding whether to extend a plaintiff's time for serving defendants, "a district court is afforded ample discretion to weigh the 'overlapping considerations' involved in determining whether good cause exists, and whether an extension may be granted in its absence." *Shepherd v. Fischer*, No. 9:10-CV-01524 (TJM/DEP), 2015 WL 1246049, at *21 (N.D.N.Y. Feb. 23, 2015) (citing *Zapata*

*v. New York*, 502 F.3d 192, 197 (2d Cir. 2007)). Some circuits require district courts to apply a two-step analysis to determine whether good cause exists for an extension to be granted. *See Zapata*, 502 F.3d at 197. However, the Second Circuit has determined that, "whether such a bifurcated inquiry would be useful is a question best left to the district court[.]" *Id.*

Based on a thorough review of the record, the undersigned concludes that there is no good cause for plaintiff's failure to identify and serve the Doe Defendants. Plaintiff filed his amended complaint on October 23, 2023. *See* Dkt. No. 85. In its Decision and Order dated March 13, 2023, the Court permitted plaintiff's Eighth Amendment deliberate medical indifference claim against the Doe Defendants to survive initial review. *See* Dkt. No. 102 at 21-22. In the March 2023 Decision and Order, the Court

ordered plaintiff to "take reasonable steps through discovery to ascertain the identity of defendants John Doe #1, John Doe #2, Jane Doe #9, Jane Doe #2, and Doe Mental Health Counselor." *Id*. at 23-24. The Court also advised plaintiff that the "failure to timely serve those defendants will result in dismissal of the claims asserted against them and termination of those defendants from the action." *Id*. at 24. Over three years have passed since the Court issued its direction in its March 2023 Decision and Order. To date, plaintiff has failed to either identify the Doe Defendants or serve them with the amended complaint. During this period, the Court (1) held a discovery scheduling conference that plaintiff refused to attend and (2) extended the time to complete discovery. *See* Dkt. Nos. 118-21, 136. Plaintiff has been afforded ample opportunity to identify and serve the Doe Defendants. Plaintiff's failure to do so "has

not been the result of lack of opportunity." *See Taft v. Fricke*, No. 9:17-CV-0346 (GTS/CFH), 2019 WL 5197180, at *1, n.2 (N.D.N.Y. July 26, 2019), *report and recommendation adopted*, 2019 WL 4744225 (N.D.N.Y. Sept. 30, 2019).

As the Doe Defendants have not been served and have not appeared in the action within the applicable ninety-day time period, and there is no good cause to justify plaintiff's failure to identify and serve the Doe Defendants, it is recommended that plaintiff's claims, insofar as asserted against the Doe Defendants, be dismissed.

## VI. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. Nos. 157-58) be **GRANTED** in its entirety; and it is further

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No. 161) be **DENIED** as moot; and it is further

**RECOMMENDED**, that Defendants John Doe 1, John Doe 2, Jane Doe 2, Jane Doe 9, and Doe Mental Health Counselor be sua sponte **DISMISSED** from this action without prejudice, due to plaintiff's failure to identify or serve these defendants with the amended complaint; it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), defendants have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.[8]

Dated: August 17, 2026

---

[8] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).

Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge